For the record, your honors, my name is Tony Gallagher, and I represent Mary Ellen Spotted Bear. I'm the federal defender for the District of Montana, and I'm not in good voice today. I've got the same crud that everybody else in Montana has right now. Your honors, I raised three issues in my brief, two with respect to expert testimony, and the final with regard to sentencing. I'm going to focus on the second of the two issues that I raised in my brief. If there are any questions with regard to the other issues, I would be more than happy to answer them. Specifically, however, I'm going to focus on the issue in Lynn Kurtz's testimony where the government elicited an opinion which violated, we believe, Ms. Spotted Bear's right to a jury trial. In that, he, Lynn Kurtz, the expert called by the government, gave the ultimate issue, question, answered the ultimate issue which was to be answered by the jury and the jury alone. And that is whether or not she could operate a motor vehicle safely under the condition that she was in which the government claimed that she was intoxicated. Now, as the government says that the question was answered, the question was if somebody had this blood level, would that person be impaired operating safely? No one said she did have that blood level, and she wasn't referred to. Is that correct? That's correct, Your Honor. The government posed that question in the form of a hypothetical, indicating that if someone had a .18 BAC blood alcohol content, would they be able to operate a motor vehicle safely? And the answer, of course, by Mr. Kurtz was no, that they would not. I believe that that – What kind of an expert was Mr. Kurtz? He's a forensic toxicologist. Would he be competent to answer that question as a factual matter? We claimed no, and that was one of our – that was tied in with our first issue is that he was not competent to answer that question. But Judge Padden ruled that he was competent to answer that question. What's wrong with the question? Isn't that what experts do? I beg your pardon, Your Honor? Isn't that what experts do, if they're actually experts? If they're actually experts, they do offer opinions of that nature. But, of course, in this particular instance, because her level of alcohol intoxication was the issue that the jury was supposed to determine. It was an element of the offense. It was the ultimate issue that the jury was supposed to determine. And by answering that question, even in the form of a hypothetical, which, most respectfully, Your Honor, we believe was a canard, I mean, whether he says an individual or whether he says Mary Ellen Spotted Bear, a .18 BAC is the .18 BAC that the blood draw showed that Ms. Spotted Bear had approximately 90 to 120 minutes after the accident occurred, which was, as I said, tied in with our first issue, that it should not have been allowed at all. Because it was so long from the event itself. The accident itself occurred as early as 5.15 in the morning. Your Honor, that type of hypothetical really wasn't a hypothetical. That's exactly what he said. There was no back extrapolation. What's wrong with it is that it is irrelevant because it's a .18 BAC an hour and a half after the accident occurred. It's her blood alcohol level at the time of the accident that is relevant to the determination of whether or not she was operating a motor vehicle under the influence of alcohol. But doesn't this tend to corroborate other evidence that she'd been drinking around the time that she was driving the vehicle? It would tend to corroborate other evidence, of course. So it's relevant. It is. The fact that she had a BAC an hour and a half after the accident is relevant. What is not relevant is the fact that the government was allowed to go that one step further in that they said someone with that BAC would not be able to operate a motor vehicle safely. Did you object to that question? I did. And that was subsumed in my... I beg your pardon, Your Honor. Isn't it a real objection that it essentially violated the motion to eliminate? In other words, that it appeared to be extrapolating backwards because why else would it be relevant, even as a hypothetical question, unless you thought that this person had that BAC? Well, yes, Your Honor. It did, in fact, violate the motion to eliminate. That was the objection you made. It wasn't the objection I made because if the Court can – I'm sure the Court has viewed the excerpts here. Judge Haddon did not allow me to go any further nor to argue any further with regard to that particular motion at the time that the objection was made. So, I mean, we're left with no explanation for why I made that argument, but now I can tell the Court that the reasons were multifaceted. And one was that it went beyond the motion to eliminate. Two, that it was not relevant. And three, that it violated the ultimate issue restriction, and that is that they – he, Mr. Kurtz, was allowed to give an opinion that was the ultimate jury determination in the case, and that is whether or not the spotted bear was operating a motor vehicle under the influence of alcohol on that particular morning. I was unable to find in the record any request on your part for cautionary instruction to the jury. I did not make a – That would have been the – That would have been the right thing to do at that time, but I did not do it. Yeah. Your Honors, as I've indicated, this is really a pretty simple issue. I think that it is one that is apparently a first impression in the circuit, at least in this particular context. And I think that it would behoove us to prevent the government from making these types of presentations to a jury and in violating one's constitutional right to a jury trial, to have a jury determination of all of the elements of the offense by allowing them to offer ultimate issue testimony such as they do in this case. Now, if we knew that she had the .18 blood level at the time of the crime, for some reason we knew it, and they asked this hypothetical question to the expert, would that be a problem? If we knew that she had a .18 at the time that she was operating the motor vehicle, in other words, immediately after the accident they drew blood and had that testimony, would that be a problem? I certainly would think it would be a problem. It still is violating the ultimate issue. The jury is the one who makes that determination. But how else is the jury supposed to make that determination without expert evidence of what it means to have .18 blood level? I mean, if you said to me, you know, this person has a ... whatever blood level, I wouldn't have any way of judging how that relates to the issues in the case unless I had some expert telling me what somebody with that blood level can or cannot do safely. Otherwise, it's meaningless. Well, Your Honor, there was testimony leading up to the question that was posed by the government with regard to the legal limit in Montana as being .08. Yes, but that's not going to be dispositive of the crime, right? Because even if the crime doesn't require that she have above the legal limit, it requires that she be unable to operate the vehicle safely, and therefore it's a, what was it, involuntary manslaughter or whatever it was? It was involuntary manslaughter. Right. So that's not going to do it. But I need somebody to tell me how bad is this. I don't think you do, Your Honor, because remember what the issue is, is that she committed the involuntary manslaughter while committing an act not amounting to a felony. Driving while intoxicated in Montana is such a crime. It is not a felony. You're saying it didn't matter whether she could operate it safely, even if as long as she was violating Montana law, that's all that mattered. That's really it. If she was operating the motor vehicle recklessly, for instance, if she was operating the motor vehicle in gross negligence, that would be something not amounting to a felony, which may have led to the death of Mr. Upham. Right. But in this particular case, by allowing the government to give that testimony that she was operating the motor vehicle unsafely because she had a .18 an hour and a half after the accident, violated the jury's determination of that issue. What's the best case you have on your argument that this was a question on the ultimate issue? I think it's the Scott case, which is mentioned in my brief. It's, I believe, the best one. It's persuasive authority. It's not dispositive because it's a second-circuit case. But I think that that speaks to the type of issues that I'm speaking to here. Thank you very much, Your Honors. I've got 45 seconds left. I'd like to reserve that. Thank you, Mr. Gallagher. Okay. Mr. Thaggart. Good morning. For the record, my name is Joe Thaggart. I'm an assistant United States attorney from the District of Montana, and I work in practice in the Great Falls Division. I, too, will concentrate on the second issue raised by Mr. Gallagher. And in particular, what I would point out is the question as phrased to Mr. Kurtz was, in fact, a hypothetical question. It was not, was this defendant under the influence two hours after the accident when she registered a .18? It was, in fact, posed as this question, would a person at this BAC be under the influence? It was, then, a hypothetical question. And I believe that the case of United States v. Gonzales is instructive in this regard because Gonzales states that there is a distinction between a hypothetical question and a question as to the actual mental state of the actual defendant. And Gonzales, I think, places great emphasis on the fact, in particular, that a jury can decide that a defendant is not such a hypothetical person, that the defendant differs from such a hypothetical situation, and that is what was the case in this instance. Mr. Gallagher was able to conduct an extensive cross-examination of Mr. Kurtz. And that cross-examination caused Mr. Kurtz to make a number of concessions. In fact, he didn't know what Spotted Bear's BAC was at the time of the accident. He couldn't tell you if she'd reached a peak alcohol point, what her level of absorption was, what her metabolism were, a number of factors along those lines. And certainly in that instance, a jury could have decided that Ms. Spotted Bear would not fit the circumstance posed by the hypothetical question. And I think ultimately that Gonzales controls in that respect. I would point out to the Court that Mr. Kurtz was qualified to render such an opinion. If you look at page 49 of the excerpts of a record submitted by Mr. Gallagher, and in particular page 192 of the trial transcript, he testified that he previously had testified as an expert in Federal court on blood alcohol concentration and its effects on the human bodies. You know, I'm troubled by this whole way the case was tried. You offered this testimony about the 1.8, and you were told that it was not supposed to be used for BAC rate extrapolation. But it's perfectly clear that from the jury's point of view, judging by the closing arguments, that's exactly what the jury must have done. They must have treated that as evidence of what the state of her blood alcohol level was at the time of the accident. I mean, what – did you ever argue any other reason for putting it in? Well, Judge, what – I don't believe that we did. And in particular, if I may respond to the question about the BAC rate extrapolation, I would respectfully suggest that we did not violate that. I think backward extrapolation, as we understood it, was a suggestion that we would say this person was at a 0.18, one and a half hours after the accident, and that based on what we know about absorption and metabolism and things of that nature, that this person would be at a different BAC at the time of the accident. We offered no such testimony to that effect. But isn't that surely what the jury must have done once you put that evidence in? I don't know that that's necessarily the case, Judge. And again, I would concentrate on the fact that Mr. Gallagher really did enjoy a fairly searching cross-examination of Mr. Kurtz. And I think he brought out very clearly through Mr. Kurtz that Mr. Kurtz was not in a position to really render an opinion as to what this defendant's BAC was at the time of the accident. Now, is it so that this theory of involuntary manslaughter that was tried depended on her having committed a DUI at the time of the accident? Yes, it did, Your Honor. So it depended on her having at least, what, 0.08 blood alcohol level at the time? It doesn't necessarily depend on that, Your Honor, because you can establish that somebody is driving under the influence of alcohol without necessarily establishing that they had any BAC. It's not uncommon to have DUIs which are tried where there's no BAC, where for one reason or another a test isn't administered or a defendant refuses it. There are other factors that can be taken into account. What do we have here, the fact that she said she was drunk? Yes, and that's critically important in this case. She says she was drunk when she got in this car and drove off with this individual. And there's also testimony from a highway patrolman that he concluded that the accident was caused due to speed and alcohol. And so in addition to the BAC evidence, there's this additional evidence from the word of the mouth of the defendant herself as well as from an expert. But the BAC evidence, it is very strange. The BAC evidence under the instructions that were given, and I'm not sure why that's what was given, but under the instructions that were given was not usable for to tell what her blood alcohol level was. That's correct, Your Honor. It was only usable to show that she had had some drinks that night. It was usable to show that she had some drinks. I think it was usable to corroborate her confession as well that she was drunk. That's what corroborate ñ it can't corroborate anything other than that she had some drinks, right? That's correct, Your Honor. And I think that Mr. Kurtz was fairly clear about that in his testimony because he was unable to say what her peak alcohol limit was and metabolism and issues of that. Was there testimony by people who saw her drinking regarding the scope of her drinking? There was not, Your Honor. There was just the testimony from her ñ or excuse me, the testimony from the FBI agent that he had interviewed her and that she said that she was drunk, that she had consumed more alcohol than she normally would, that I believe essentially that she was not a heavy drinker. And so the testimony actually came in from the FBI agent concerning what she told him. Can you make somebody be convicted of a DUI in Montana without any blood levels if they say I was drunk? I believe so, Your Honor. In a previous incarnation as a state prosecutor, I prosecuted a fair number of DUI cases. I won't go quite so far to say that we convicted somebody solely on the basis of a confession. But a confession also is not a confession. It's I was drunk. Yes. You know, people have different definitions of that. And somebody might say they were drunk because they had a half a glass of wine, because they're not used to having a half a glass of wine. But would that be a DUI in Montana? I think with the additional testimony by the highway patrolman about the nature of the accident, the fact that she was driving 89 miles an hour, I think that that would corroborate that, and I would feel confident taking that to a jury. I see that I have a little bit of time left. I'm essentially done with this issue. I'm certainly willing to answer any other questions you have. Just let me ask one other question about this. So there's no – that was the only theory that the case went to the jury on. It didn't go to the jury on a recklessness or negligence or fraudulent negligence or anything else. No. It only went to the jury on the theory that she was committing a DUI at the time. Precisely, Your Honor. Thank you, Your Honor. Your Honors, I have 40 seconds left, and there's two things I wanted to say. First, if the BAC level – You never brought a sufficiency of the evidence challenge. I beg your pardon? You never brought a sufficiency of the evidence challenge. No, Your Honor, I did not. If the BAC level was only to corroborate her statement that she'd been drinking, why ask the question whether or not someone at .18 can operate a vehicle safely? Well, you could object to the question. I did. Isn't that harmless error in any case? It's not harmless error in this particular case because, as Judge Berzon pointed out, this was really a pretty close case. I mean, besides her statement, Patrolman Son's testimony with regard to speed and alcohol, alcohol came from what other people told him about – Finding the beer cans on the street. The beer cans, but there were also unopened beer cans, not just empty beer cans. There were unopened beer cans. Well, I don't know if that helps a lot. So, I mean, you know, if it's an unopened beer can, certainly she didn't consume it. But – And what about her confession? Isn't that enough? It really wasn't a confession. She was distraught when she was interviewed by Agent Weinman. And Agent Weinman said, were you drinking? And she said, I don't drink very much. I was drunk that night. It seems like an admission that she was drunk. It seems like an admission that she was drinking. And as Judge Berzon pointed out, one person's – Well, not just drinking, but then in her subjective opinion at least, she was drunk, which in common meaning has, you know, has a certain range of meaning at least. It has a certain range of meaning. But when, in this particular case, because it was such a close call, because of the type of individual that she was and is, that testimony by Mr. Kurtz so violated her right to have the jury determine the element of the offense with regard to driving under the influence of alcohol. And that's why we say it's not harmless error, because it violates that constitutional right to have the jury determine the issue. So that gets back to your original argument. Yes. About the form of the question. Yes.  Thank you. Thank you. The United States v. Mary Allen Spotted Bear shall be submitted.
judges: Gould, Berzon, Schwarzer